IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

SONJA EDWARDS, §
§
    Plaintiff, §
§
v. § EP-04-CA-00219-KC
§
AARON RENTS, INC., §
§
    Defendant. §

**ORDER**

On this day, the Court considered "Plaintiff's Application for Attorney Fees" filed on July 5, 2006, "Defendant's Motion for Judgment as a Matter of Law; In the Alternative, Defendant's Motion for New Trial; and, In the Alternative, for Remittitur," "Plaintiff's Application for Attorney Fees" filed on August 10, 2006, and "Plaintiff's Motion for Equitable Relief and Motion for Entry of Judgment." For the reasons set forth herein, Plaintiff's Application for Attorney Fees filed on July 5, 2006 is **DENIED** as moot, Defendant's Motion for Judgment as a Matter of Law is **DENIED** in part and **GRANTED** in part, Plaintiff's Application for Attorney Fees filed on August 10, 2006 is **GRANTED** in part, and Plaintiff's Motion for Equitable Relief and Motion for Entry of Judgment is **GRANTED** in part.

I.     **BACKGROUND**

On June 4, 2004, Defendant Aaron Rents, Inc. ("Defendant") removed the instant action for employment discrimination under the Texas Commission on Human Rights Act (TCHRA) to federal court. On March 7, 2006, this Court ruled on Defendant's Motion for Summary Judgment, granting the motion as to Plaintiff's retaliation claim but denying the motion as to Plaintiff's gender discrimination claim. A more detailed factual background to this case can be

found in that order.  Thereafter, the case proceeded to trial by jury, and on June 1, 2006, the jury

rendered a verdict in Plaintiff's favor.

Specifically, the jury unanimously found the following:

(1) By a preponderance of the evidence, that Defendant intentionally terminated
Plaintiff because of her gender;

(2) That $113,000 in back pay and $300,000 in compensatory damages would
fairly and reasonably compensate Plaintiff for damages that resulted from such
conduct;

(3) By clear and convincing evidence, that Defendant engaged in gender
discrimination with malice or with reckless indifference to the right of Plaintiff
to be free from gender discrimination; and

(4) That $1,000,000 should be assessed against Defendant as punitive damages for
engaging in gender discrimination.


In working to secure this verdict, Plaintiff's counsel submitted an affidavit claiming to

have spent the following amount of time on the following work:

| General Description of Work | Hours |
| --- | --- |
| (1) Correspondence to and from defense counsel, client and court; telephone calls | 39.0 |
| (2) Pleadings (drafting of petition, depo notices, motions for leave, pleadings associated with pretrial order (schedules A and C), subpoenas, summary judgment response and appendix (and research); limine motions, witness and exhibit lists) and reviewed defendant's pleadings | 93.3 |
| (3) Discovery (drafting of interrogatories, requests for production (3 sets), preparing disclosures, answering defendant's interrogatories, request for production, supplemental responses; reviewing defendant's responses to plaintiff's interrogatories, requests for production (3 sets) | 47.8 |
| (4) Depositions (preparation, review of discovery responses, meetings with witnesses, and attendance - depos of Edwards, Sanderson, Strickland) | 35.4 |

2

| | |
|---|---|
| (5) Mediation (preparation and attendance) | 10.6 |
| (6) Hearings - motion to quash, status hrg - (prep and attendance) | 8.3 |
| (7) Trial preparation (reviewed depositions, discovery responses, meetings with witnesses, drafting of direct and cross examination questions, researched legal issues raised in defendant's motion in limine) | 75.0 |
| (8) Trial | 34.5 |
| (9) Post trial motions (entry of judgment, attorney fee applications, affidavit) | 15.0 |
| **Total** | 358.9 |

## II.   DISCUSSION

### A.   Standards

#### 1.   Attorney's fees

In a case arising under diversity jurisdiction yet governed by state law, courts apply state law in determining whether and in what amount to award attorneys' fees. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). State law in Texas allows a court to award attorneys' fees to a prevailing party for claims brought under the TCHRA. TEX. LAB. CODE ANN. § 21.259(a) (Vernon 1996).

#### 2.   Motion for judgment as a matter of law

The standard for reviewing a motion for a judgment as a matter of law is the same as that for reviewing a motion for summary judgment. *Gluzman v. United States*, 2006 U.S. Dist. LEXIS 68150, at *8 (N.D. Tex. Sep. 22, 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial. *Id.* (citing *Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986)).  The court should consider all evidence in the light, and with all reasonable inferences, most favorable to the party opposed to the motion. *Wardlaw v. Inland Container Corp.*, 76 F.3d 1372, 1375 (5th Cir. 1996) (citing *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969)).  "If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper." *Id.*

### 3.    Motion for new trial

Federal Rule of Civil Procedure 59 provides a district court with discretion to grant a new trial.  FED.R.CIV.P. 59 (2006).  While Rule 59 does not specify the grounds for a new trial, case law illustrates that a new trial may be granted if the district court finds that the size of the verdict is against the weight of the evidence, that the damages awarded are either excessive or inadequate, or that the trial was unfair or marred by prejudicial error.  *Norris v. Bertucci Contr. Corp.*, 2006 U.S. Dist. LEXIS 53567, at *1-2 (E.D. La. July 31, 2006) (citing *Dunn v. Consol. Rail Corp.*, 890 F.Supp. 1262, 1287 (M.D. La. 1995)).  In making this determination, courts examine whether the verdict is against the great weight of evidence or would result in a miscarriage of justice.  *Id.*

### 4.    Motion for remittitur

Federal Rule of Civil Procedure 59 allows a district court to alter or amend a damage award if the jury's judgment was excessive.  FED.R.CIV.P. 59.  Nonetheless, a court will not reverse a jury verdict as excessive except upon the "'strongest of showings'" that the award was completely disproportionate to the injury sustained by the plaintiff.  *DiStefano v. Otis Elevator Co.*, 1998 U.S. Dist. LEXIS 1071, at *30 (E.D. La. Jan. 30, 1998) (citing *Caldarera v. E.*

*Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983)).  A court will grant a remittitur only when the distortion between the injury and the award is so vast as to "'shock the judicial conscience, so gross or inordinately large as to be contrary to right reason, so exaggerated as to indicate bias, passion, prejudice, corruption, or other improper motive, or as clearly exceeding that amount that any reasonable man could feel the claimant is entitled to.'" *Id.*

In considering a motion for remittitur, the Fifth Circuit employs the "maximum recovery rule," which holds that a court must reduce a jury's verdict to the maximum amount that a jury could have properly awarded.  *DiStefano,* 1998 U.S. Dist. LEXIS 1071, at *30-31; *see Rutland v. Sundowner Offshore Serv., Inc.*, 1992 U.S. Dist. LEXIS 13494, at *5-6 (E.D. La. Sep. 2, 1992). The court's reassessment of damages is inherently subjective because it involves experience, emotion, and calculation.  *DiStefano*, 1998 U.S. Dist. LEXIS 1071 at *30-31.  The court is not required to compare a jury's award to awards in other cases as each case is determined on its own facts.  *Id.* at *31.

### B.      Plaintiff's Application for Attorney Fees

Plaintiff argues that she is entitled to a lodestar fee of anywhere between $71,780.00 and $125,616.00, in addition to an upward adjustment based on several factors, for a total of $175,000.00 in attorneys' fees.  Specifically, Plaintiff argues that a reasonable hourly rate for the work performed in El Paso County by an attorney of her counsel's expertise is between $200.00 and $350.00 per hour, for 358.9 hours of work, which results in a lodestar between $71,780.00 and $125,616.00.  Plaintiff further argues that she deserves an upward adjustment based upon: (1) the time and labor required in this case, (2) the novelty and difficulty of the questions, (3) the level of skill required, (4) the experience, reputation, and ability of the attorney, (5) the fact that the fee

was contingent, (6) the amount involved and the result obtained, and (7) awards in similar cases. Finally, Plaintiff asks this Court to award contingent appellate fees.

Defendant responds by arguing first that the application for attorneys' fees should be denied in its entirety because Plaintiff's counsel did not submit a record sufficient to justify the award of attorneys' fees. In the alternative, Defendant argues that any fees awarded Plaintiff should be reduced either by 50%, because Plaintiff's counsel failed to separate the work done in preparation for the successful gender discrimination claim from the unsuccessful retaliation claim, or 70% because of the above and as punishment for the inadequate documentation. Defendant also argues that Plaintiff is entitled to no upward adjustments. Finally, Defendant argues that an award of contingent appellate fees would be premature at this point.

Under the TCHRA, courts apply the traditional lodestar method in determining whether and in what amount to award attorneys' fees. *Dillard Dep't Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 412 (Tex. App. 2002); *see also Borg-Warner Protective Serv. Corp. v. Flores*, 955 S.W.2d 861, 870 (Tex. App. 1997) (setting forth same standard). In applying the lodestar method, the court first determines the number of hours reasonably spent by counsel on the matter. *Gonzales*, 72 S.W.3d at 412. Next, the court multiplies that number by the hourly rate that the court deems reasonable for similarly complex, non-contingent work. *Id.* This product results in the "lodestar." *Id.*

Thereafter, the court may adjust the lodestar for factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required; (4) the effect on other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount

involved and the result obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the attorney's relationship with the client; and (12) awards in similar cases. *Id.* (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).  If some of these factors have already been accounted for in the initial lodestar, they should not be considered when making adjustments.  *Id.*

In the instant case, Plaintiff argues that a reasonable hourly rate is between $200.00 and $350.00 per hour and Defendant concedes that $225.00 per hour is a reasonable hourly rate. Moreover, the Texas State Bar website indicates that an average or mean hourly rate for an El Paso attorney is $183.00 per hour, a median hourly rate for an El Paso attorney is $175.00 per hour, a high mean hourly rate is $200.00 per hour, and a high median hourly rate is $325.00 per hour.  STATE BAR OF TEXAS DEPARTMENT OF RESEARCH & ANALYSIS, *Hourly Rates in 2005 Report* (Sep. 21, 2006), http://www.texasbar.com/Content/ContentGroups/ Publications3/Research_and_Analysis3/Statistics/hr2005.pdf (last visited Oct. 4, 2006).  In light of these figures, Plaintiff request, and Defendant's concession, this Court finds that $225.00 per hour is a reasonable hour rate in this case.

Next, Plaintiff argues that based upon the figures in her counsel's affidavit, rewritten above for convenience, she is entitled to 358.9 hours worth of fees.  Defendant argues first that Plaintiff should receive no fees because of inadequate documentation, and alternatively that her fees should be reduced because of the inadequate documentation and segregation under the Supreme Court's holding in *Hensley v. Eckerhart*, 461 U.S. 424, 440 n.14 (1983).  In the Fifth Circuit, "a party may recover for time spent on unsuccessful motions so long as it succeeds in the overall claim." *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 434 (5th Cir. 2003).  Moreover,

although it is well-settled that "the extent of a plaintiff's success is a critical factor" in determining the amount of fees to be awarded in a case, *Hensley*, 461 U.S. at 435, 440 n.14, the Fifth Circuit has held that "claims for relief that involve a common core of facts, or derive from related legal theories, cannot be viewed as a series of discrete claims." *Hernandez v. Hill Country Tel. Coop., Inc.*, 849 F.2d 139, 144 (5th Cir. 1988).

The instant case, unlike that discussed in *Hensley*, does not involve "distinctly different claims for relief that are based on different facts and legal theories." *Hensley*, 461 U.S. at 434. Rather, Plaintiff's claims for gender discrimination and retaliation involve the same core set of facts and derive from related legal theories. Accordingly, Plaintiff's counsel did not err in failing to segregate the time spent on the unsuccessful retaliation claim from that spent on the successful gender discrimination claim, and he may recover for all time claimed in the affidavit. Thus, Plaintiff's counsel's reasonably hourly rate, $225.00 per hour, multiplied by 358.9 hours of work, results in a lodestar product of $80,752.50.

Plaintiff next argues that her attorney's fees should be adjusted upward based on the time and labor required for this case, arguing that (1) this case required extra time and labor because he is a sole practitioner, (2) Defendant's counsel are nationally recognized specialists in employment law with experience, and (3) the trial lasted for four (4) days, requiring Plaintiff's counsel to "shut down" for over two weeks. Defendant argues that no upward adjustment is necessary because the case involved only three depositions, one motion, and there were long periods of time when counsel was not required to do anything. Defendant further argues that, in the Fifth Circuit, even in cases that involve complex factual investigation, an upward adjustment is inappropriate because such factor is already included in the additional hours that this factor necessitated. *EEOC v.*

8

*Clearlake Dodge*, 60 F.3d 1146, 1155 (5th Cir. 1995).  In light of *Clearlake*, this Court finds that the time and labor required to work on this case was already considered in calculating Plaintiff's lodestar, and thus an upward adjustment for this factor would be inappropriate.

Plaintiff also argues that she is entitled to an upward adjustment based on the novelty and difficulty of the questions involved in the case because he had to rely on circumstantial evidence of discrimination in order to prevail.  Defendant responds by arguing that there was nothing novel or difficult about the questions of law in this case, as illustrated by the fact that trial lasted only two (2) days[1].  In Texas, upward adjustments are only granted under this factor when the case involves some novel issue, such as when an attorney must confront a recent change in the law. *See, e.g., Gonzales*, 72 S.W.3d at 412 (finding case novel or complex when attorney dealt with recent change in Fifth Circuit law).  Plaintiff has presented no evidence that the instant case involved novel or complex issues, and therefore an upward adjustment as to this factor would be inappropriate.

Plaintiff argues that she is entitled to an upward adjustment based on the level of skill required to prevail in the case, and based upon her attorney's experience, reputation, and ability. Defendant "acknowledges that John Wenke is a very fine lawyer" but that being a very fine lawyer does not warrant and upward adjustment.  Defendant cites to a Fifth Circuit case which holds that special-skilled counsel is ordinarily reflected in hourly rates and that upward adjustments are only justified in rare cases where the applicant offers evidence that his service was superior to that one

---

[1]     This Court notes that Plaintiff claims that trial lasted four (4) days while Defendant claims that it lasted only two (2).  *Compare* Pl.'s Application for Att'y Fees 3, *with* Def.'s Resp. and Objections to Pl.'s Application for Att'ys Fees 3.

could reasonably expect. *Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 536 (5th Cir. 1986). Unlike *Abrams*, this Court did not take into account Plaintiff's counsel's level of skill and experience in calculating the lodestar. To the contrary, as indicated above, this Court used an average hourly rate for an El Paso attorney to calculate the lodestar. Moreover, this Court notes that Plaintiff's counsel is a prominent local attorney who has had great success in the field of employment litigation. *See* Law Office of John A. Wenke, Attorney at Law, http://www.johnwenke.com (last visited 10/04/06) (describing verdicts received). Accordingly, the Court finds that an upward adjustment is appropriate under this factor.

Plaintiff next argues that she is entitled to an upward adjustment based upon the fact that her attorney took this case on a contingent fee basis. Under Texas law, the fact that an attorney takes a case on a contingent fee basis is an appropriate consideration in enhancing a lodestar because an attorney takes the risk that he may never recover if unsuccessful, and further because compensation is delayed if the attorney is successful. *Gonzalez*, 72 S.W.3d at 413. Defendant does not respond to this argument. However, this Court finds that Plaintiff's counsel should be compensated for the risk he took in advocating this case on a contingent fee basis and for the delay in his compensation. Therefore, the Court will grant an upward adjustment based on this factor.

Plaintiff argues that she should be granted an upward adjustment based upon the result obtained in this case, because an award of $175,000.00 would represent only 12 percent of the amount of the jury's verdict. Defendant argues that this amount has already been subsumed within Plaintiff's counsel's hourly rate, and that the amount recoverable will be altered by the imposition of statutory caps. However, as noted above, this Court has not yet considered the

10

amount involved and the result obtained in this case.  Defendant concedes that the jury's verdict of $1,400,000.00 is an exceptional result, and thus this Court will grant an upward adjustment for this factor.

Plaintiff also argues that she should be granted an upward adjustment based upon awards in similar cases, citing several cases and the attorneys' fees awarded therein.  Defendant does not specifically respond to this argument.  In light of the examples cited by Plaintiff, and as this is an appropriate factor to consider in granting an upward adjustment, this Court will grant an upward adjustment for this factor.

Finally, Plaintiff argues that she should be conditionally granted $70,000.00 in fees for time that she expects to spend on appellate work.  Defendant argues that the Court should, instead, deny this request without prejudice to allowing Plaintiff to request such fees after they have been incurred.  While this Court recognizes that Texas law allows for an award of appellate attorneys' fees, provided that they are conditioned upon ultimate success, *Flores*, 955 S.W.2d at 870, this Court finds that such an award is inappropriate at this time.  Were this Court to award conditional attorneys' fees, the amount would be speculative at best and likely subject to motions to modify the award by both parties.  In the interest of judicial economy, this Court will deny the request for conditional appellate fees without prejudice to Plaintiff refiling such motion after the fees have, in fact, been incurred.

In light of the above, this Court holds that Plaintiff should be awarded the following amount in attorneys' fees:

| Description | Amount |
|---|---|
| Reasonable Hourly Rate | $80,752.50 |

11

| | |
|---|---|
| Upward Adjustments for: (1) Skill Required and for the Experience and Reputation of the Attorney; (2) Taking the Case on a Contingent Fee Basis; (3) Result Obtained; and (4) Awards in Similar Cases | $50,000.00 |
| **Total**: | $130,752.50 |

### C.    Defendant's Motion for Judgment as a Matter of Law

Defendant argues that the Court should grant judgment as a matter of law in its favor because the reasons given for Plaintiff's termination were not pretextual and because Plaintiff's termination was not based upon her gender.  Plaintiff responds by arguing that the evidence presented at trial supported the jury's finding of liability, providing a detailed analysis of *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735 (Tex. 2003) and other relevant caselaw.

The Court dealt extensively with the issues raised by Defendant in its Order granting in part and denying in part Defendant's Motion for Summary Judgment, issued on March 8, 2006. Moreover, Defendant has presented no case law or argument which illustrates that the facts and inferences point so strongly and independently in favor of one party that reasonable men could not differ.  *See Wardlaw*, 76 F.3d at 1372 (setting forth standard for judgment as a matter of law). Accordingly, Defendant's Motion for Judgment as a Matter of Law is denied.

### D.    Defendant's Motion for New Trial

Defendant's entire request for a new trial consists of the following line: "[i]n the alternative, Defendant moves for a new trial on liability and damages because the jury's verdict was against the great weight and preponderance of the evidence."  Defendant failed to set forth the relevant standard for motions for a new trial, cite any case law in support of its position, and present any argument in support of its position.  Accordingly, Defendant's Motion for a New

Trial is denied on the condition that Plaintiff accept the reduction in damages discussed below.

### E.    Defendant's Motion for Remittitur

Defendant argues first that Plaintiff is entitled to no punitive damages because the evidence does not rise to the level of proof required to support a finding that the Defendant acted with malice or reckless indifference.  Defendant also argues that the jury's award of compensatory damages should be remitted to reflect her testimony that her mental anguish lasted only two months.  Finally, Defendant argues that the back pay award must be remitted in order to take into account Plaintiff's mitigation of damages.

Plaintiff responds by arguing first that she is entitled to punitive damages because the evidence was sufficient to show that the Defendant acted with, at least, reckless or callous indifference to her legally protected rights.  Plaintiff also argues that the award of compensatory damages should stand because the evidence was sufficient to prove that she suffered "'emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses,'" each of which are compensable under Texas law.  Finally, Plaintiff argues that the evidence was sufficient to support the jury's award of back pay and that Defendant failed to raise offset as an affirmative defense, thereby waiving any claim to it.

### 1.  Punitive damages

The TCHRA allows a plaintiff to recover punitive damages after a jury finds that the defendant has engaged in an unlawful, intentional employment practice.  TEX. LAB. CODE ANN. §21.2585.  A plaintiff may only recover punitive damages if she demonstrates that the defendant "engaged in a discriminatory practice with malice or with reckless indifference to the state-

protected rights of an aggrieved individual[2]." *Id.*; *Shoreline, Inc. v. Hisel*, 115 S.W.3d 21, 26 (Tex. App. 2003).

In order to recover punitive damages, a plaintiff must show more than mere discrimination. *Id.* (citing *Kolstad v. Am. Dental Assoc.*, 527 U.S. 526, 534 (1999)). The plaintiff must show that the defendant acted with the awareness that it was or may have been violating the law, not merely with the awareness that it was engaging in acts constituting retaliation or discrimination. *Ancira Enter., Inc. v. Fischer*, 178 S.W.3d 82, 94 (Tex. App. 2005) (citing *Kolstad*, 527 U.S. at 535-36). Accordingly, "even intentional retaliation or discrimination may not support punitive damages if the actor lacks the required awareness that such conduct is illegal." *Id.*; *see also EEOC v. W&O, Inc.*, 213 F.3d 600, 611-12 (11th Cir. 2000) (citing *Kolstad*, 527 U.S. at 536, for the proposition that "punitive damages are appropriate if, and only if, the employer acts with 'malice' or 'reckless indifference,' such that the 'employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages.'").

In the instant case, Plaintiff presented evidence that her supervisor, Sanderson, was aware that discrimination on the basis of gender was unlawful, and that Defendant's own policies prohibited gender discrimination. Tr. 2:103, 3:29. Nonetheless, within a two-month period

---

[2]      In support of its position, Defendant cites the actual malice standard announced in *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 618-19, 628-29 (Tex. 2005). Plaintiff aptly notes that *Garza* and other cases cited by Defendant were decided under Chapter 451 of the Texas Labor Code rather than the TCHRA. Chapter 451 of the Texas Labor Code applies a different standard to an award of punitive damages, namely the requirement that a defendant act with actual malice rather than actual malice or reckless indifference. Therefore the cases cited by Defendant only address one method by which Plaintiff can support her award of punitive damages. *Compare Garza*, 164 S.W.3d at 628-29, *with* Tex. Lab. Code Ann. § 21.2585, *and Hisel*, 115 S.W.3d at 26.

14

Sanderson removed all female managers from the Dyer Street store and replaced them with male employees. Tr. 2:101. Moreover, the day after Plaintiff attempted to speak with Sanderson's supervisor, purportedly to pursue a discrimination complaint, Sanderson terminated her. Tr. 2:70, 3:65-66, 3:74-75. This evidence, in addition to other evidence presented at trial, was sufficient for the jury to conclude that the defendant engaged in gender discrimination with at least reckless indifference to Plaintiff's right to be free from gender discrimination. TEX. LAB. CODE ANN. §21.2585; *Hisel*, 115 S.W.3d at 26. In other words, Plaintiff presented sufficient evidence that Defendant acted with the awareness that it was or may have been violating the law. *Fischer*, 178 S.W.3d at 94. Accordingly, this Court affirms the jury's award of punitive damages subject to the statutory cap discussed below.

### 2. Compensatory damages

The TCHRA allows compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. TEX. LAB. CODE ANN. §21.2585(d). Such damages must be supported by competent evidence concerning the injury. *Brady v. Fort Bend County*, 145 F.3d 691, 718 (5th Cir. 1998) (citing *Carey v. Piphus*, 435 U.S. 247, 264 n.20 (1978)). Failure to provide sufficient evidence results in an award of only nominal damages. *Id.*

In the instant case, the jury was properly instructed on Texas law. Moreover, Plaintiff presented ample evidence at trial of her emotional pain, suffering, and loss of enjoyment of life, Tr. 2:250-56; 3:13-14, such that a jury could reasonably have awarded $300,000.00 in compensatory damages. Accordingly, Defendant's Motion for Remittitur as to compensatory damages is denied subject to the statutory cap to be discussed below.

### 3.   Back pay

The TCHRA allows the court to award back pay.  TEX. LAB. CODE ANN. §21.258
(allowing equitable relief).  Though a court may submit the issue of back pay to a jury, such
submission is made on an advisory basis only because back pay is an equitable issue left to the
sound discretion of the court.  *Id.*; *Caballero v. Cent. Power & Light* Co., 858 S.W.2d
359, 361 (Tex. 1993) (holding that equitable relief under TCHRA is to be determined by a judge);
*see also Sellers v. Delgado Comm. Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990) (discussing similar
rule under Fifth Circuit law).  Any award of back pay must be reduced by any interim earnings,
workers' compensation benefits, and unemployment compensation benefits.  *Stanley Stores v.
Chavana*, 909 S.W.2d 554, 563 (Tex. App. 1995); *Prof'l Serv., Inc. v. Amaitis*, 592 S.W.2d 396,
397 (Tex. App. 1979).  In addition, while failure to plead offset waives offset as an affirmative
defense, pleading mitigation as an affirmative defense may be broad enough to encompass the
notion of offset.  TEX. R. CIV. P. 94 ("The right of offset is an affirmative defense, and the burden
of pleading offset and of proving facts necessary to support it are on the party making the
assertion."); *Ford Motor Co. v. Ozuna*, 1999 Tex. App. LEXIS 8913, at *12 (Tex. App. 1999)
(failure to plead offset results in waiver); *Bd. of Educ. v. Jennings*, 102 N.M. 762, 764-66 (N.M.
1985) (treating offset as a subset of mitigation); *Amaitis*, 592 S.W.2d at 397 (finding reversible
error where court did not allow defendant to provide evidence regarding mitigation even though
defendant failed to plead mitigation); BALLENTINE'S LAW DICTIONARY, *Mitigation of Damages*,
http://www.lexis.com (including broad definition of mitigation); *see also Hall v. White, Getgey,
Meyer & Co.*, 347 F.3d 576, 585 (5th Cir. 2003) (failure to plead offset as an affirmative defense
waives it).

Defendant argues that Edwards' jury award of $113,000.00 in back pay must be remitted because the jury failed to consider her efforts to mitigate damages. Specifically, Defendant argues that Edwards was unemployed for two months, causing lost earnings of $7,320.00 and that she later received compensation in the amount of $3,050.00 per month (including $2,400.00 per month in wages from the Lynd Company and the value of an apartment[3] worth $650.00 per month), such that her lost earnings are the difference between what she was earning at Aaron Rents ($3,660.00 per month) and what she was receiving at her new job ($3,050.00 per month) for the relevant time period.[4] Though Defendant does not specifically set forth the relevant dates by which it calculated its final number, Defendant argues that Plaintiff should receive only $18,712.00 in compensatory damages.

Plaintiff responds by arguing that her salary was rapidly increasing and was set to increase still further had she remained employed by Defendant. Indeed, Plaintiff argues that there is no limit on the amount a manager may earn, and that some employees may make as much as $100,000.00 to $150,000.00 – a number the jury might have relied upon in making its calculation as to back pay. Moreover, Plaintiff responds by arguing that although Defendant seeks to offset Plaintiff's award for interim earnings and benefits, Defendant failed to plead offset as an

---

[3]    Plaintiff and Defendant argue over whether Plaintiff's back pay should be reduced by the value of the apartment. Plaintiff admits that she lived in the apartment, rent-free, because she could not afford other accommodations, but that in exchange she was forced to be "on-call" 24-hours per day. Common sense dictates that the value of the apartment was part of Plaintiff's wages, or at least a benefit, of her employment. Therefore, it is proper to include this value in reducing Plaintiff's back pay award.

[4]    Defendant makes reference to Edwards earning $3,050.00 per month and later $3,005.00 per month. Based upon the record, it is clear that this was a mistake and the correct figure should be $3,050.00.

affirmative defense, and therefore waived it.

   In reviewing the award of back pay in this case, the Court finds that although Defendant terminated Edwards on January 5, 2004, two months is a reasonable period to allow someone to find a new job in an attempt to mitigate damages.  Therefore, it is inappropriate to reduce Plaintiff's award by any amount for the period between January 5, 2004 and March 2004, the month in which Plaintiff found new employment.  The Court further finds the evidence sufficient to conclude that Plaintiff earned approximately $3,050.00 per month since March of 2004, and thus her damages should be reduced by $3,050.00 per month from March of 2004 through June 1, 2006 when the jury returned its verdict.  This results in an overall reduction of $3,050.00 per month multiplied by 27 months, or $82,350.00.  Thus, Plaintiff's award of back pay must be reduced by $82,350.00 to take into account her interim earnings and benefits.

   For the jury have to concluded that Plaintiff was entitled to $113,000.00 in back pay while taking into account the mitigation amount detailed above, the jury would have had to conclude that Plaintiff would have made a total of $195,350.00 after Defendant terminated her.  Defendant terminated her on January 5, 2004, which means that she would be entitled to back pay from January 5, 2004 until June 1, 2006, or an approximate total of 29 months.  This means that the jury would have found that she would have made approximately $6,737.00 per month, or $80,844.00 per year.  This is almost twice the amount Plaintiff received in salary when Defendant terminated her.  While this Court acknowledges the fact that Plaintiff's salary might have increased and/or she might have received bonuses from Defendant, the amount awarded by the jury is nonetheless disproportionate to the amount Plaintiff had, and would likely have, received.  This Court finds that a salary of $50,000.00 per year, or $4,167.00 per month, is sufficient to take

18

into account any potential increase in Plaintiff's salary and/or any bonuses that Defendant may have awarded Plaintiff.

Using this salary, Plaintiff would have received $4,167.00 per month for a period of 29 months, for a total of $120,843.00. She mitigated her damages during the relevant time period by $82,350.00. Accordingly, this Court will award $38,493.00 in back pay.

### 4.    Statutory cap

The TCHRA caps the maximum damages allowable for the sum of compensatory and punitive damages, depending upon the number of employees of the defendant.[5] TEX. LAB. CODE ANN. § 21.2585(d); *Hisel*, 115 S.W.3d at 25. For example, in the case of a defendant who employs more than 500 employees, the sum of compensatory and punitive damages may not exceed $300,000.00. TEX. LAB. CODE ANN. §21.2585(d). "Where maximum damages are provided in statutes in Texas, and a defendant wishes to rely on the cap, it is considered a defense that must be plead and proved." *Id.*

In the instant case, Defendant failed to raise any argument regarding its number of employees, and therefore it waived any such argument. *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 446 (Tex. 2004) (finding defendant waived argument that it had fewer than 500 employees, and hence the cap on compensatory and statutory damages was lower than $300,000.00, because it did not raise the issue). In addition, Defendant essentially admits that it has over 500 employees by asking for a statutory cap of $300,000.00. Pursuant to the TCHRA, this Court must therefore impose a statutory cap of $300,000.00 on the sum of the compensatory and punitive damages. This cap does not apply to back pay, interest on back pay, or any other

---

[5]    An important issue raised to this Court only through a footnote.

equitable relief.  *Zeltwanger*, 144 S.W.3d at 446.

In light of the above, Plaintiff's award of compensatory and punitive damages is remitted to a total of $300,000.00 and Plaintiff's back pay award is remitted to $38,493.00.

### F.    Plaintiff's Motion for Equitable Relief

Plaintiff argues that she should be awarded $495,000.00 in front pay[6], based on a salary of $99,000.00 per year[7].  She argues that she is entitled to an award of prejudgment interest at the rate of 8.0 percent on her back pay and compensatory damages award from July 17, 2004 to the day before the date judgment is rendered, and an award of postjudgment interest pursuant to the federal statute.  Finally, she argues that she should recover court costs, including expert fees.

Defendant responds by arguing that front pay is inappropriate in this case.  First, Defendant argues that Plaintiff has failed to show that reinstatement is not feasible – a prerequisite for receiving an award of front pay.  Next, Defendant argues that this Court should not exercise its discretion to award front pay because Plaintiff does not need front pay in order to make her whole.  Defendant makes no response to Plaintiff's request for prejudgment interest, postjudgment interest, or costs.

"Front pay refers to future lost earnings."  *Wal-Mart Stores v. Davis*, 979 S.W.2d 30, 45 (Tex. App. 1998).  The TCHRA allows a plaintiff to recover front pay when a plaintiff shows that reinstatement is not feasible.  TEX. PATTERN JURY INSTRUCTIONS 110.30, Comment, *Front Pay*

---

[6]    Plaintiff raised the issues of back pay, front pay, and punitive damages in its Motion for Equitable Relief.  However, this Court has already addressed the issues of back pay and punitive damages and will therefore only discuss front pay and interest in this section.

[7]    Plaintiff arrived at this figure by taking the median between Plaintiff's former salary at Aaron Rents, $48,000.00 per year, and the maximum amount a manager might make per year, $150,000.00.

(2003 ed.) (citing similar federal law). This includes situations in which a hostile relationship exists between the employer and the plaintiff. *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 526 (5th Cir. 2001). Texas courts vary on whether an award of front pay is an equitable issue for the court or a legal issue for the jury. *Id.* It is clear from legislative history, however, that front pay is an equitable remedy, and equitable remedies are awarded by the court. *See Julian v. City of Houston*, 314 F.3d 721, 729 (5th Cir. 2002) (holding front pay is an equitable issue for the judge to determine); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423 (5th Cir. 1998) (holding that front pay is an equitable remedy for the judge to determine but the judge may nonetheless empanel an advisory jury); *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 817 (5th Cir. 1990) (equitable issue).

In the instant case, Plaintiff's supervisor testified that he did not consider Plaintiff eligible for re-hire. This demonstrates, at the very least, that there is a hostile relationship between Plaintiff and the employer such that reinstatement is not feasible under the *Mota* standard. Moreover, Defendant's attempt to rebut this argument by asserting that "the issue is not eligibility, but feasibility," is neither supported by any citation to legal authority nor consistent with *Mota*. Accordingly, the Court finds that an award of front pay is appropriate in this case.

This Court finds that a salary of $55,000.00 per year is sufficient to take into account Plaintiff's salary, any increase therein, and/or any bonuses she may have received had she remained employed with Defendant for two more years. *See, e.g., Deloach*, 897 F.2d at 822 (noting that the period with which to calculate an award of front pay is a matter within the court's discretion). However, this Court also finds that because Plaintiff currently makes $39,780.00 per year, her future lost earnings cannot be said to include that amount. Accordingly, this Court finds

that the difference between the amount Plaintiff might have received on average over the next two

years while employed by Defendant, $55,000.00 per year, and the amount Plaintiff currently

receives, $39,780.00 per year, would be a sufficient award of front pay.  Thus, the Court awards

Plaintiff $55,000.00 per year minus $39,780.00 per year, or $15,220.00 per year, for the course of

two years, for a total of $30,440.00.

## III.    CONCLUSION

In light of the above, Plaintiff's Application for Attorney Fees filed on July 5, 2006 (Doc.

No. 75) is **DENIED** as moot, Defendant's Motion for Judgment as a Matter of Law (Doc. No.

76) is **DENIED** in part as to the Motion for Judgment as a Matter of Law and Motion for New

Trial and **GRANTED** in part as to the Motion for Remittitur, Plaintiff's Application for Attorney

Fees filed on August 10, 2006 (Doc. No. 91) is **GRANTED** in part, and Plaintiff's Motion for

Equitable Relief and Motion for Entry of Judgment (Doc. No. 92) is **GRANTED** in part.

**IT IS THEREFORE ORDERED** that Plaintiff have and recover $130,752.50 in

reasonable attorney's fees against Defendant.

**IT IS FURTHER ORDERED** that Plaintiff have and recover $300,000.00 in

compensatory and punitive damages against Defendant.

**IT IS FURTHER ORDERED** that Plaintiff have and recover $38,493.00 in back pay

against Defendant.

**IT IS FURTHER ORDERED** that Plaintiff have and recover $30,440.00 in front pay

against Defendant.

**IT IS FURTHER ORDERED** that Plaintiff recover pre-judgment interest on her back

pay and compensatory damages at the rate of 8.0% per annum from July 17, 2004 until the day

before entry of judgment.

**IT IS FURTHER ORDERED** that Plaintiff recover post-judgment interest pursuant to the applicable federal statute from the date of judgement until paid.

**IT IS FURTHER ORDERED** that Plaintiff have and recover all court costs, including expert witness fees, against Defendant.

**IT IS FURTHER ORDERED** that Plaintiff is allowed such writs and processes for the enforcement and collection of this judgment.

**IT IS FINALLY ORDERED** that all other pending motions, if any, are **DENIED** as moot.

The clerk shall close the case.

**SO ORDERED**.

**SIGNED** on this 17th day of October 2006.


_Kathleen Cardone_
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE